UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| THE C.P. HALL COMPANY, | ) | No. 11 B 26443 |
| | ) | |
| Debtor. | ) | Judge Goldgar |

**MEMORANDUM OPINION**

Currently pending is the motion of chapter 7 trustee Joseph A. Baldi under Rule 9019, Fed. R. Bankr. P. 9019, to approve a settlement with two groups of creditors. Under the settlement, the claims of those creditors would be allowed. Another creditor, however, has objected to the claims and contends the settlement cannot be approved until his objection is addressed. At a recent status hearing, the court disagreed and set Baldi's motion for an evidentiary hearing.

On reconsideration, however, the court agrees with the objecting creditor. The creditor has statutory rights to object to the claims and obtain a ruling on his objection. The settlement cannot be approved if approval would deprive the creditor of those rights. The hearing will therefore be stricken, and Baldi's motion will be continued until the objection is resolved.

**1. Jurisdiction**

The court has subject matter over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B).

## 2. Background

The C.P. Hall Company is a defunct distributor of raw asbestos products. In 2011, C.P. Hall filed a chapter 11 bankruptcy case that was later converted to a case under chapter 7, and Baldi was appointed interim trustee. Like other asbestos companies, C.P. Hall has been the subject of many personal injury actions from people claiming harm from its products. Most if not all of these people hold judgments against C.P. Hall and are creditors in the bankruptcy case. Like other asbestos companies, C.P. Hall also had insurance policies that may provide coverage for the claims. Except for a bank account with a trivial balance, the policies and their proceeds are C.P. Hall's only assets.

Since before the bankruptcy case was filed, various personal injury creditors have been fighting over the relative priority of their rights to C.P. Hall's assets. On one side is James Shipley, as representative of his late wife's estate. Shipley filed a proof of claim in the bankruptcy case for $3,362,465. On the other side are two groups of creditors. One group, represented by the Chicago law firm Cooney & Conway, filed a proof of claim asserting claims totaling $121,610,107. The other group, represented by the O'Brien Law Firm in St. Louis, filed a proof of claim asserting claims totaling $30,900,000.

Although personal injury creditors typically hold unsecured claims, both Shipley and the Cooney & Conway and O'Brien creditors insist their claims are secured at least in part, and objections have been asserted to the secured status of all of the claims. Shipley has filed adversary complaints against the Cooney & Conway and O'Brien creditors seeking a determination that he has a lien on certain insurance proceeds, that any lien the Cooney & Conway and O'Brien creditors have is invalid, and that to the extent both he and these creditors

have liens, his is superior to theirs. In the complaints, Shipley also objects to the claims. Baldi has objected to Shipley's claim, contending the claim is not secured. Shipley's adversary proceedings and Baldi's claim objection are pending.

In February 2014, meanwhile, Baldi reached a settlement with the Cooney & Conway and O'Brien creditors. Under the settlement agreement, these creditors would relinquish their position that their claims were secured. The claims would be paid instead as "general unsecured claims" without any sort of administrative or priority status. (Dkt. 220, Ex. A at 3). In return, the claims would be "allowed in full." (*Id.*).

In March 2014, Baldi moved under Rule 9019 for approval of the settlement. Shipley opposed the motion, arguing not only that the settlement was not in the best interests of the estate but also that the court had no authority to allow the Cooney & Conway and O'Brien claims without first ruling on his objection to them. (Dkt. No. 236 at 1). Baldi responded that Shipley's claim objection posed no barrier to approval of the settlement because he had no standing to pursue it. (Dkt. No. 240 at 6-7). Even if he had standing, Baldi added, the court had the power to approve the settlement regardless of its effect on Shipley's objection. (*Id.* at 7-8). In support of this second point, Baldi cited *In re Kaiser Aluminum Corp.*, 339 B.R. 91 (D. Del. 2006), and *In re The Heritage Org.*, 375 B.R. 230 (Bankr. N.D. Tex. 2007).

After several rounds of briefing, a status hearing was held. At the hearing, the court agreed that under *Kaiser* and *Heritage*, a hearing on the Rule 9019 motion could be held despite the pending claim objection. A date for the hearing was set.

On reflection, however, and after further review of the parties' memoranda and the *Kaiser* and *Heritage* decisions, the court concludes that Shipley is correct.

### 3. Discussion

Shipley is correct that he has standing to object to the Cooney & Conway and O'Brien claims. He is correct, as well, that he is entitled to a ruling on his objection. Baldi cannot enter into a settlement of the claims that would strip him of these rights, effectively settling Shipley's objection out from under him. On both points, Shipley has the Bankruptcy Code on his side. Baldi's position is based on judicial concepts of bankruptcy policy with no support in the Code.

The Code grants Shipley standing to object to the claims. Section 502 governs the allowance of claims and interests and permits any "party in interest" to object. *See* 11 U.S.C. § 502(a). The Code does not define "party in interest" (except in section 1109(b), which is irrelevant here). *In re Lewis*, 459 B.R. 281, 288 (N.D. Ill. 2011). The Seventh Circuit, however, has said that a "party in interest" is "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *Adair v. Sherman*, 230 F.3d 890, 894 n.3 (7th Cir. 2000); *see also In re FBN Food Servs., Inc.*, 82 F.3d 1387, 1391 (7th Cir. 1996). The interest must be a pecuniary one. *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607-08 (7th Cir. 1998).

A creditor's interest in a bankruptcy case is pecuniary, and so a creditor is a "party in interest" with standing to object to the claims of other creditors. *Adair*, 230 F.3d at 894 n.3; *see also In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014) (noting that "everyone with a claim to the *res* [the debtor's assets] has a right to be heard before the *res* is disposed of . . . ." (quoting *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992)). Indeed, a debtor's creditors "are the primary parties in interest" in the debtor's case. 4 *Collier on Bankruptcy* ¶ 502.02[2][d] at 502-13 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014). The right of one creditor to object to the claims of another therefore "should be undisputed on principle." *Id.*

Baldi does not contest these basic principles. He asserts, however, that in a chapter 7 case, the trustee has a duty to object to claims, *see* 11 U.S.C. § 704(a)(5), and the trustee alone has standing to object unless he fails or refuses to do so unreasonably. This position has support in the case law, *see, e.g., Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1147 (1st Cir. 1992); *Pascazi v. Fiber Consultants, Inc.*, 445 B.R. 124, 129 (S.D.N.Y. 2011) (calling it "the majority rule"); *In re Trusted Net Media Holdings, LLC*, 334 B.R. 470, 475-76 (Bankr. N.D. Ga. 2005), and in a leading treatise, *see Collier, supra*, ¶ 502.02[2][d] at 502-13 to -14.[1/] *Collier* explains that although creditors have a right to object to claims, "the needs of orderly and expeditious administration do not permit the full and unfettered exercise of such right." *Id.* at 502-13. The right of creditors to object, then, "is restricted." *Id.* at 502-14.

The problem is that this restriction on creditors' rights is a "judicial" one that does not appear in the Code itself. *Ulz*, 401 B.R. at 327 n.5. The right to object to claims that section 502(a) grants creditors like Shipley is unqualified. Nowhere is it made subject to "the needs of orderly and expeditious administration." It may be that sound bankruptcy policy warrants limiting creditors' rights this way, and when it comes to objecting to claims a chapter 7 trustee should be given first crack. But Congress, not the courts, decides what makes for sound bankruptcy policy. When Congress expresses its views in the Code, courts have no business rewriting the Code to suit themselves, "turning it into something they consider more logical, sensible, or conducive to human enlightenment." *In re Miller*, 493 B.R. 55, 59 (Bankr. N.D. Ill.

---

[1/]    One case that does not support Baldi, although he cites it, is *In re Ulz*, 401 B.R. 321 (Bankr. N.D. Ill. 2009). In *Ulz*, this court simply acknowledged the limitation on the rights of creditors to object to claims, noted that the "Seventh Circuit has not yet decided whether this limitation is valid," and then declared that "[i]ts validity need not be considered here." *Id.* at 327 n.5.

2013) (internal quotation omitted). The Seventh Circuit has repeatedly warned against this sort of departure from clear Code provisions. *See, e.g., Sunbeam Prods., Inc. v. Chicago Am. Mfg., LLC*, 686 F.3d 372, 375-76 (7th Cir. 2012); *In re Kmart Corp.*, 359 F.3d 866, 869 (7th Cir. 2004).

Just as Shipley has a right to object to the Cooney & Conway and O'Brien claims, he has a right to receive a ruling from the court on his objection notwithstanding Baldi's proposed settlement. Section 502(b)(1) declares that when a party in interest objects to a claim, "the court *shall* determine the amount of such claim . . . and *shall* allow [the] claim" in that amount unless the claim is objectionable under sections 502(b)(1)-(9). 11 U.S.C. § 502(b)(1) (emphasis added). The court's obligation to rule on a claim objection is mandatory, and the creditor's right to a ruling is also unqualified. Nothing in the Code subordinates that right to the trustee's duty to administer the estate, let alone his agreement with a creditor that the creditor's claim will be allowed.

The *Kaiser* and *Heritage* decisions on which Baldi relies are unpersuasive for the same reason that *Thompson* is unpersuasive on the standing point: the decisions are based not so much on an analysis of the Code as on the courts' own policy views. *Kaiser* begins by finding no "direct conflict" between section 502(a) and Rule 9019 that would "require the Bankruptcy Court to resolve claim objections before approving a settlement." *Kaiser*, 339 B.R. at 94. The question, though, is not one of a possible conflict between section 502(a) and Rule 9019.[2/] The

---

[2/] There is no conflict, direct or indirect. Unlike sections 502(a) and (b), Rule 9019 does not address claims or claim objections. It merely authorizes a bankruptcy court to "approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The rule does not even apply unless a settlement involves some underlying action that the Code says can only take place with court approval. *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994). If there were a conflict, moreover, the Code provisions would control. *In re Stoecker*, 179 F.3d 546, 552

question is whether anything in sections 502(a) or (b) (or in any other Code section, for that matter) restricts a creditor's right to object to a claim and obtain a ruling on the objection. *Kaiser* identifies nothing. There is nothing.

*Kaiser* then observes that "such a procedure [i.e., making a trustee's settlement wait on the resolution of a creditor's claim objection] would undermine the important policy of promoting settlements in bankruptcy proceedings by requiring the parties to litigate the very issues that the settlement seeks to resolve." *Id.* True, "compromises are favored in bankruptcy." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). But that policy supplies no basis for casting aside a creditor's rights under sections 502(a) and (b). Decisions on bankruptcy policy, again, are for the legislative branch. If Congress decides it makes sense as a policy matter to let chapter 7 trustees compromise claims in such a way as to moot other creditors' objections to those claims, it can amend the Code. Until then, the Code must be enforced as written. *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1127-28 (7th Cir. 2003) ("[T]he judiciary's job is to enforce the law Congress enacted, not write a different one that judges think superior.").

*Heritage* is no more convincing. That decision begins by repeating and endorsing the unsatisfactory *Kaiser* analysis. *Heritage*, 375 B.R. at 285. The decision then says:

> Taken to its logical conclusion, the . . . argument that § 502 confers not only a right to object to a claim but also a right to a ruling would mean that the Court could *never* permit a settlement of a claim objection – . . . . even though both the claimant and the objectant [*sic*] desired a different result.

*Id.* (emphasis in original). This assertion ignores the plain terms of section 502(b) and is wrong in any event. The problem in *Heritage*, *Kaiser*, and this case arises only in a three-way dispute

---

(7th Cir. 1999).

where one creditor has objected to the claim of another and the trustee wants to settle with the other creditor. Nothing in section 502 prevents the settlement of a two-way dispute between a trustee and a single creditor or forces a court to rule on a claim objection no one wants to pursue. The "case or controversy" requirement in Article III bars courts from ruling on disputes that have been settled. *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 748 (11th Cir. 1991).

*Heritage* goes on to say that "the better way to harmonize § 502 and Rule 9019" is to read the 'notice and a hearing' requirement of Rule 9019 as satisfying the right to be heard with respect to a claim objection." *Heritage*, 375 B.R. at 285. But there is no need to "harmonize" the statute and rule because they do not conflict. *See* discussion, *supra*, at 6 n.2. Even if they did, a hearing under Rule 9019 would provide no solace to the objecting creditor. The Rule 9019 hearing would address only whether the settlement should be approved, not whether the creditor's objection should be sustained. Even the merits of the dispute to be settled would go undecided. *In re Energy Co-op, Inc.*, 886 F.2d 921, 927 n.6 (7th Cir. 1989) (noting that in approving a settlement a court should not decide the merits of particular issues). In no sense would a hearing on the settlement of the trustee's objection to the claim serve as an adequate substitute for a hearing on the creditor's objection under section 502(b).

Because section 502(a) entitles Shipley to object to the Cooney & Conway and O'Brien claims, and because section 502(b) entitles him to a ruling on his objection, the hearing on a settlement that would allow those claims and moot Shipley's objection cannot proceed. The objection must be decided first. The hearing on Baldi's motion to approve the settlement will be stricken.

### 4. Conclusion

For these reasons, the evidentiary hearing on the motion of trustee Joseph Baldi for approval of settlement is stricken. The motion will be continued to another date for a status hearing. A separate scheduling order will be entered consistent with this opinion.

Dated: July 15, 2014

_____
A. Benjamin Goldgar
United States Bankruptcy Judges